|, TERRI F. LOVE, Judge.
On February 28, 2000, defendant, Kenyon R. Williams, was charged by bill of information with one count of attempted first degree murder in violation of La. R.S. 14: (27)30, one count of armed robbery in violation of La. R.S. 14:64, two counts of aggravated burglary in violation of La. R.S. 14:60, and two counts of false imprisonment while armed with a dangerous weapon in violation of La. R.S. 14:46.1. The defendant pled not guilty, to all charges at his arraignment on March 13, 2000.
A preliminary and suppression hearing was held on June 14, 2000. The trial court found probable cause and denied defendant’s motions to suppress evidence and identification. The State dismissed the armed robbery charge on October 3, 2000. After a three-day jury trial, the defendant was found guilty of aggravated battery and two counts of unauthorized entry of an inhabited dwelling on October 5, 2000. The defendant was acquitted on the two counts of false imprisonment.
On February 15, 2001, the trial court sentenced the defendant to serve ten years at hard labor on the aggravated battery conviction and three years on each count of unauthorized entry of an inhabited dwelling. The sentences on the | ¡.convictions for unauthorized entry of an inhabited dwelling were to be served concurrently with each other and consecutively to the sentence on the aggravated battery conviction.
On the evening of November 4, 1999, Derwin Anear, his girlfriend, Yvonne Bar-thelemy and Latisha Anear, his niece, were asleep in his trailer. Anear awoke when he heard someone knocking at the door. When he opened the door, three men attacked him. Anear told the men that his girlfriend and niece were in the trailer and to leave them alone. At that point, Latisha woke up and heard Anear arguing with someone outside. Latisha ran into the bedroom and woke up Yvonne. One of the men, later identified as Henry Coleman, entered the trailer armed with a gun and told the women to come out into the living area. Latisha told Coleman that Yvonne was pregnant, and he allowed them to sit on the sofa. Coleman asked Yvonne “where were the drugs and money?” She stated that she did not know anything about drugs but that they did have some money that was in the bedroom. She showed Coleman where the money had *276 been hidden. Coleman took the money, approximately six thousand dollars, and walked outside. He returned inside the trailer; then he heard someone say that the police were coming, and all of the men left. Shortly thereafter, she heard a gunshot towards the highway.
At approximately the same time, Rolen-da Merrick, Ancar’s sister who lived next door, heard Anear talking to someone. She heard someone say, “Where it’s at?” She went outside and asked the man, later identified as Ortiz Jackson, what he wanted with her brother. Jackson told her to shut up and stay there. Jackson had a knife at Ancar’s throat. A few minutes later, another man, later identified as Coleman, asked her if anyone was in the trailer and if she had a telephone. She stated that she did not have a phone and that her children and grandchild were in lathe trailer. Anear and Jackson began fighting outside when Coleman went inside Ancar’s trailer. He was able to break away from Jackson and ran towards the highway. He turned and saw the three men running from the trailer and entering a blue Cadillac. At that point, he observed Kenyon Williams take off the mask he had been wearing. The defendants saw Anear near the highway and fired at him. Anear ran back towards the trailers. He did not realize he had been shot until he got back to his trailer. Rolenda took Anear to the hospital.
When the police arrived on the scene, Yvonne gave the officers a statement and then proceeded to the hospital. On the way to the hospital, she was stopped and asked if she could identify the perpetrators in a one on one identification. She identified Coleman at the scene. Letisha identified Coleman in a photographic lineup, and Anear identified Williams, Coleman and Jackson in photographic lineups. Anear stated that he had seventy-five hundred dollars in his trailer that was to be used to pay off his vehicle. He testified that his mother loaned some of the money to him and the rest was received as a partial settlement of a lawsuit. He admitted to several misdemeanor and traffic convictions as well as two convictions for possession of cocaine.
Detective Jessie Ledet, the officer in charge of the investigation, arrived on the scene at approximately 11:30 p.m. When he arrived on the scene, he learned that the victim’s sister had taken the victim to the hospital. He took photographs of the scene and obtained statements from several witnesses. He conducted photographic lineups with the witnesses who identified Coleman, Jackson and Williams.
Officer William Black, Jr. was on patrol when he heard the description of the vehicle used during the incident. He observed a vehicle fitting the description |4in Iron-ton. He stopped the vehicle one mile north of Ironton, near the BP plant. Other officers assisted in stopping the vehicle. The three subjects in the vehicle were ordered out of the vehicle and patted down. Williams was driving the vehicle, Coleman was the passenger in the front seat, and Jackson was the passenger in the rear seat. No weapons were found in the vehicle. Each subject was placed in a separate police vehicle and advised of his rights. While they were on the scene, Lt. Bowers arrived with Yvonne Barthelemy. After she identified the subjects, they were transported to jail.

ERRORS PATENT

A review of the record for patent errors reveals none.

DISCUSSION

In his sole assignment of error, the defendant contends that the trial court denied defendant his Sixth Amendment right to confront his accusers when the trial *277 court allegedly limited his cross-examination of Anear. The defendant sought to cross-examine him on his plea bargain in a criminal matter in another division of the 25th Judicial District Court for the Parish of Plaquemines. The trial court allowed the defendant to proffer testimony on the issue outside the presence of the jury. Our review of the testimony elicited from the witnesses presented during the proffer indicates that the alleged plea bargain had nothing to do with the present matter and did not involve his testimony in the case at bar. The trial court properly refused to allow the defendant to present evidence of Ancar’s plea agreement.
In State v. Rankin, 465 So.2d 679 (La.1985), the Louisiana Supreme Court held that the defendant was entitled to cross examine a witness and the witness’ | sattorney about a plea agreement entered into with the State in which the witness agreed to testify against the defendant truthfully.
The case at bar presents different circumstances than those set out in Rankin. Unlike the witness in Rankin, Anear did not enter into an agreement with the State to testify against the defendant in exchange for a lesser sentence on his pending charge. During the proffer, he admitted that he had been accused of distributing cocaine in October of 1999. He was not arrested until after the shooting incident as the police officers were in involved in a continuing undercover operation. Anear was eventually arrested and charged with two counts of distribution of cocaine. He eventually pled guilty to the lesser offense of possession of cocaine on each count. Anear stated that he pled guilty, while he denied selling cocaine, because he was afraid of going to jail for five years. He pled guilty to possession of cocaine in June of 2000. He stated that he did not enter a deal with the State to plead to a lesser offense in exchange for his testimony at the defendant’s trial.
The testimony of David Hufft, the assistant district attorney who handled Ancar’s distribution of cocaine case, was also proffered. Mr. Hufft stated that he could not personally identify Anear but reviewed his file prior to testifying:
Q. Okay. Let me ask you, Mr. Hufft, the plea arrangement as we understand already, we already heard and it’s part of the record here that Mr. Anear pled guilty to possession of cocaine, originally charged with two counts of distribution of cocaine, do you know the basis of the plea agreement, why it came about?
A. The basis of the plea agreement was tendered by me pursuant to pretrial discussion with his attorney Mr. Bopp, Eric Bopp was representing him at that time. It was my understanding, and I’ve attempted to review the facts of the file before coming here, since I was just called and I do remember the case though. Mr. Anear was the driver of a vehicle, there was an identification problem in connection with this case. No actual narcotics agents could I.D. Mr. Anear as the driver. It was only certain cooperating individuals who told the agents that Mr. Anear was the driver of the vehicle that night. Now, the agents did identify the vehicle as being both owned and |firegistered to Mr. An-ear. But I have no narcotics agents to testify that Mr. Anear was actually operating the vehicle that night.
Q. So as result of that, do you tender a lesser plea in the proceeding with the possession of cocaine?
A. That’s correct. And one of the other factors that came into plea agreement was the fact that as to my *278 knowledge and the information that I presently have before me and I had before me in June of 2000, was that Mr. Anear had no previous felony convictions.
Mr. Hufft’s testimony also reveals that Ancar’s guilty pleas to the charges of possession of cocaine were not related to An-car’s testimony in the present case. In fact, Mr. Hufft stated that the present case was originally assigned to Division “B.”
Q. Any deal made since Mr. Anear was a victim of a crime in this case that we are here for trial, was there any deal made or any consideration for the fact that he was the victim of another crime?
A. To be honest with you, and I know that Derwin Anear is a victim in this crime, initially this case that’s before this court today was assigned to Division “B”. At the time it was assigned to Division “B” for me to review, I realized and was also verified by Ms. Kennedy, that I was prosecuting Derwin Anear on two counts of distribution. At that time I made the determination not to even review it because in my view I had a conflict of interest, I could not have defendant that I was prosecuting and a victim and handle both at the same time. So I transferred it immediately to Division “A.”
Mr. Hufft further stated that never talked to Mr. Ballay, the prosecutor in the present case, after Hufft transferred the case to Division “A.”
The evidence presented during the proffer reveals that there was no memorandum of understanding between the State and Anear concerning his testimony in the present case. The testimony indicates that Anear was able to plead guilty to the lesser offense of possession of cocaine due to the weakness of the State’s case and his attorney’s ability to negotiate.
| .^Accordingly, the trial court did not err when it refused to allow the defendant to cross-examine Anear about his plea agreement, since it bore no relation to the instant case.

CONCLUSION

For the foregoing reasons, we affirm the defendant’s convictions and sentences.
AFFIRMED.