2TERRI F. LOVE, Judge.
This appeal concerns resentencing only. Finding no error in the sentences, we affirm.
Henry Coleman was charged with six felony offenses: one count of attempted first degree murder, one count of armed robbery, two counts of aggravated burglary, and two counts of false imprisonment while armed with a dangerous weapon. The armed robbery charge was dismissed prior to trial. The appellant was found guilty on October 5, 2000, of aggravated battery, aggravated burglary, unauthorized entry of an inhabited dwelling and two counts of false imprisonment while armed with a dangerous weapon. The State filed a multiple bill charging the defendant as a second offender, and on February 15, 2001, the trial court sentenced the defendant under La. R.S. 15:529.1 on all five counts. He appealed and, in an unpublished opinion, this court held that the trial court erred in sentencing Coleman as a multiple offender on all five of his offenses and vacated the sentences and remanded the case for resentencing. State v. Coleman, 2001-1463 consolidated with 2001-1151 (La.App. '4 Cir. 9/18/02), 827 So.2d 671.
Mr. Coleman was resentenced on October 13, 2002, to serve ten years on the aggravated battery conviction; twenty years as a second offender under La. R.S. 15:529.1 on the aggravated burglary conviction to run consecutively to the | ¡¡aggravated battery conviction; six years on the unauthorized entry into an inhabited dwelling conviction to run concurrently to the aggravated burglary conviction; and ten years on each of the two false imprisonment convictions to run concurrently with the aggravated burglary conviction. The appellant’s motion for reconsideration was denied and his motion for an appeal was granted.
The facts of the case, as summarized in State v. Kenyon Williams, 2001-1464 (La.App. 4 Cir. 5/1/02), 818 So.2d 274, in which we affirmed a co-defendant’s conviction and sentences, are as follows:
On the evening of November 4, 1999, Derwin Anear, his girlfriend, Yvonne Barthelemy and Latisha Anear, his niece, were asleep in his trailer. Anear awoke when he heard someone knocking at the door. When he opened the door, three men attacked him. Anear told the men that his girlfriend and niece were in the trailer and to leave them alone. At that point, Latisha woke up and heard Anear arguing with someone outside. Latisha ran into the bedroom and woke up Yvonne. One of the men, later identified as Henry Coleman, entered the trailer armed with a gun and told the women to come out into the living area. Latisha told Coleman that Yvonne was pregnant, and he allowed them to sit on the sofa. Coleman asked Yvonne “where were the drugs and money?” She stated that she did not know anything about drugs but that they did have some money that was in the bedroom. She showed Coleman where the money had been hidden. Coleman took the money, approximately six thousand dollars, and walked outside. He returned inside the trailer; then he heard someone say that the police were coming, and all of the men left. Shortly thereafter, she heard a gunshot towards the highway.
At approximately the same time, Rolen-da Merrick, Anear’s sister who lived next door, heard Anear talking to someone. She heard someone say, “Where it’s at?” She went outside and asked the man, later identified as Ortiz Jackson, what he wanted with her brother. Jackson told her to shut up and stay there. Jackson had a knife at Ancar’s *1087 throat. A few minutes later, another man, later identified as Coleman, asked her if anyone was in the trailer and if she had a telephone. She stated that she did Rnot have a phone and that her children and grandchild were in the trailer. Anear and Jackson began fighting outside when Coleman went inside Anear’s- trailer. He was able to break away from Jackson and ran towards the highway. He turned and saw the three men running from the trailer and entering a blue Cadillac. At that point, he observed Kenyon Williams take off the mask he had been wearing. The defendants saw Anear near the highway and fired at him. Anear ran back towards the trailers. He did not realize he had been shot until he got back to his trailer. Rolenda took Anear to the hospital.
When the police arrived on the scene, Yvonne gave the officers a statement and then proceeded to the hospital. On the way to the hospital, she was stopped and asked if she could identify the perpetrators in a one on one identification. She identified Coleman at the scene. Letisha identified Coleman in a photographic lineup, and Anear identified Williams, Coleman and Jackson in photographic lineups. Anear stated that he had seventy-five hundred dollars in his trailer that was to be used to pay off his vehicle. He testified that his mother loaned some of the money to him and the rest was received as a partial settlement of a lawsuit. He admitted to several misdemeanor and traffic convictions as well as two convictions for possession of cocaine.
Detective Jessie Ledet, the officer in charge of the investigation, arrived on the scene at approximately 11:30 p.m. When he arrived on the scene, he learned that the victim’s sister had taken the victim to the hospital. He took photographs of the scene and obtained statements from several witnesses. He conducted photographic lineups with the witnesses who identified Coleman, Jackson and Williams.
Officer William Black, Jr. was on patrol when he heard the description of the vehicle used during the incident. He observed a vehicle fitting the description in Ironton. He stopped the vehicle one mile north of Ironton, near the BP plant. Other officers assisted in stopping the vehicle. The three subjects in the vehicle were ordered out of the vehicle and patted down. Williams was driving the vehicle, Coleman was the passenger in the front seat, and Jackson was the passenger in the rear seat. No weapons were found in the vehicle. Each subject was placed in a separate police vehicle and advised of his rights. While they were on the scene, Lt. Bowers arrived |Rwith Yvonne Barthelemy. After she identified the subjects, they were transported to jail.
State v. Williams, 2001-1464 at pp. 2-4, 818 So.2d at 275-276.
The facts concerning Mr. Coleman’s conviction for false imprisonment are taken from his earlier appeal; they are as follows:
In State v. Williams the facts did not include any testimony as to false imprisonment by someone armed with a dangerous weapon because Williams was found to be not guilty on those charges. However, Coleman was found to be guilty on two charges of false imprisonment on the testimony of Kendall Merrick, who told the court that Coleman entered his home with a knife, cut the telephone line, and tied him up, and that of Rolenda Merrick, who testified that Coleman — armed with a knife — forced her into her home and then tied up her son; he was in the process of tying her *1088 hands when his accomplices called to him and he left.
State v. Coleman, 2001-1463, pp. 4-5 (La.App. 4 Cir. 9/18/02), 827 So.2d 671.
The appellant through counsel now makes two assignments of error: (1) that his sentences are excessive and (2) that he is entitled to a new multiple bill hearing because part of the transcript of the multiple bill hearing is missing. He has also submitted a pro se brief in which he makes several assignments of error concerning his convictions. This appeal, however, is limited to issues concerning his sentences. Accordingly, we shall consider only his argument that consecutive sentences were imposed without justification.
In his first assignment, the appellant points out that he received the maximum sentence for four of his five offenses and did not received the minimum term under La. R.S. 15:529.1 on the other offense. He maintains that his sentences are excessive considering that he has no history of violent crime. In a pro se argument, he contends that the court erred in imposing consecutive sentences.
|fiLa. R.S. 14:60, the aggravated burglary statute, requires imposition of a sentence at hard labor for not less than one or more than thirty years. As a second offender under La. R.S. 15:529.1, Mr. Coleman faced a sentencing range of fifteen to sixty years. He received a twenty-year term. His other sentences are ten years on the aggravated battery conviction, six years on the unauthorized entry of an inhabited dwelling conviction, and two terms of ten years for each of the two convictions for false imprisonment while armed with a dangerous weapon.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). Because the trial court has broad discretion in imposing a sentence within statutory limits, a reviewing court can set it aside only if it is clearly excessive, rather than because another sentence might have been appropriate. See State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 958.
In reviewing a claim of excessive sentence, the appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines and that the sentence is warranted under the facts established by the record. State v. Soco, 441 So.2d 719 (La.1983). Because a sentence could be excessive even though it falls within the statutory limit, the trial court’s statement regarding the factors considered under Article 894.1 of the Code of Criminal Procedure is an important aid in reviewing an alleged excessive sentence. See State v. Cann, 471 So.2d 701, 703 (La.1985).
At the resentencing hearing on October 13, 2002, the judge adopted his treasons from the earlier sentencing. At that sentencing on February 15, 2001, the judge declared that a pre-sentence report had been received and studied in an effort to determine appropriate sentences. He noted that Mr. Coleman had convictions for burglary of an inhabited dwelling as a juvenile and for possession of cocaine as an adult. The judge stated that La.C.Cr.P. art. 894.1 had been considered and asked the appellant’s attorney if any other factor should be taken into account. The attorney answered negatively. The judge then stated:
The Court feels there was a deliberate cruelty to the victim. The Court feels *1089 that at that time they [the defendant and his two co-defendants] knew the victims, were targeting the victims, and due to the youthful age, that there were children present or a child present during the offense. The Court finds that there was also an aggravating circumstance in that he knowingly created the risk of death or great bodily harm to more than one person, and they used threats or actual violence in the commission of the offense in that a dangerous weapon was used.
The Court finds no mitigating circumstances ....
When asked about aggravating circumstances, the assistant district attorney stated that invading two homes at night and threatening and tying up women and children as well as shooting at a man would permanently scar the families involved. The defense attorney responded that the entire criminal incident could be characterized as a “bad drug deal gone wrong” and then suggested that one of the victims provoked-the crime and the fact that families were involved was the victim’s fault. The judge disagreed with the defense attorney’s interpretation and declared that the victim’s family was in no danger until the three defendants went to their homes. He also condemned the defendants’ violent act in attempting to shoot the victim as they were leaving the scene and noted that each man was responsible for that act.
IsThe appellant now argues that the trial court’s reasoning was irrational as to the families being in no danger until the defendant and his co-defendants attacked them. Appellant, through counsel, assumes unproven facts about the victim and his relationship with the defendant and co-defendants and presumes that the victim deliberately or thoughtlessly exposed his family to danger. We agree with the trial judge that the sleeping families were in no danger until the three defendants in this case cruelly attacked them.
The judge who sentenced Mr. Coleman also presided at his trial and was well acquainted with the facts of the case. His comments, when considered with the facts established in the record, provide this Court with a record of the considerations taken into account and an adequate factual basis for the sentence. La.C.Cr.P. art. 894.1 C. We find there was no justification for these offenses which could have resulted in very serious injuries. Furthermore, we do not find the challenged sentences to be excessive or grossly disproportionate to the seriousness of the crimes under the circumstances established in the record. See State v. Robinson, 2001-1458 (La.App. 4 Cir. 4/24/02), 818 So.2d 246; State v. Hawthorne, 454 So.2d 285 (La.App. 4 Cir.1984).
Therefore, we find no abuse of discretion in the sentences imposed by the trial court.
In his pro se assignment, the appellant contends that the district court erred in imposing his ten-year aggravated battery sentence to be served consecutively to his other sentences. Consecutive and concurrent sentences are governed by La.C.Cr.P. art. 883, which states:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms [9of imprisonment are to be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
*1090 In its reasons for judgment, the district court stated that the fact that the defendants shot at the victim was particularly distressing. The court also found that the use of a dangerous weapon in commission of the crime created the risk of death or great bodily harm to more than one person.
In State v. Walker, 2000-3200 (La.10/12/01), 799 So.2d 461, 462, the Louisiana Supreme Court considered a similar situation and stated:
Although La.C.Cr.P. art. 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the ... commission of the crimes justify treating him as a grave risk to the safety of the community.
In Walker the court noted that the defendant’s crimes — possession of a handgun and twenty-seven bags of cocaine — while on probation for an earlier crime provided the trial court with “an articulable and particularized basis for concluding that respondent was a dangerous repeat offender who merited consecutive terms of imprisonment.” Id.
Similarly, Mr. Coleman was on probation for his prior offense when he was arrested for the current crimes. The judge’s comments at sentencing indicate that the appellant was considered a danger to public safety. Furthermore in Walker, the court noted that even with the consecutive penalties the defendant’s total incarceration time was less than the maximum term he could have received as a|insecond offender on his drug conviction. We note that the maximum penalty Mr. Coleman could have received for aggravated burglary as a second offender was sixty years; the cumulative incarceration time he received including the consecutive term is thirty years or one-half of the sentencing range.
Therefore, we do not find the consecutive sentences excessive in this case.
In his second assignment through counsel, the appellant argues that Mr. Coleman is entitled to a new multiple bill hearing because part of his multiple bill transcript is missing. The appellant correctly points out that at the multiple bill hearing on November 14, 2001, the State asked for a recess because the fingerprints from the Mr. Coleman’s prior offense were not clear enough to use. The hearing was continued to November 15th when the State’s fingerprint expert testified as to a fingerprint card from Orleans Parish, which the appellant claims does not “coincide” with the Orleans Parish arrest and conviction. Asserting that the November 15th transcript is necessary to review the record, the appellant asks this Court to remand the case for a new multiple bill hearing.
The record in this case contains a document labeled “Written Reasons for Judgment under 15:529.1,” in which the judge describes what happened at the sentencing hearing. The document reads as follows:
This Court has made a finding that the defendant, Henry L. Coleman, was and is a multiple offender as contemplated by R.S. 15:529.1. He was convicted of Possession of Cocaine, 40:967 in matter # 395784 in Criminal District Court in the Parish of Orleans, he was sentenced to serve 3 years DOC.
On October 5, 2000, in the 25th Judicial District Court, the defendant under Matter # 00-0646, was convicted for the crimes of: Count 1 of Agg. Battery, R.S. 14:34. Count 2, of Agg. Burglary, R.S. 14:60, Ct. 3 Unauthorized entry of an Inhabited Dwelling, 14:62, Count 4, False Imprisonment While Armed with *1091 a | ^Dangerous Weapon, R.S. 14:46.1, and Count 5, False Imprisonment While Armed with a Dangerous Weapon, R.S. 14:46.1, all felonies under the laws of Louisiana.
The State presented evidence of the Bill of Information and minutes of the convictions from Orleans Parish, as well as the booking records of Plaquemines Parish, which all included fingerprint cards and documentation, and fingerprints taken by the expert from the defendant in open court. All fingerprints were declared to be identical to each other and to the defendant’s.
The court also noted that the defendant has the same name, date of birth, and same address. The court noted that there was a discrepancy of the Social Security number with one digit, which this court took as a typographical error. As a result therefore, this court found the defendant to be a second offender.
The document indicates the judgment was rendered on November 15, 2001, and signed on November 20, 2001.
Recently in State v. Payton, 00-2899 (La.3/15/02), 810 So.2d 1127, the Louisiana Supreme Court addressed the issue of the State’s burden of proof at a multiple bill hearing. In Payton the State appealed the finding that the evidence was insufficient to prove the appellant’s identity on a prior conviction.
The Payton opinion cites State v. Chaney, 423 So.2d 1092 (La.1983), where the court held that in “order to prove the defendant is a habitual offender, the State need only establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony.” Id. at 1103. The court also looked to State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, and State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, where the appellants challenged the sufficiency of the evidence supporting their multiple offender convictions. In those eases the courts held that there are | ^various methods available to prove that the defendant is the same person convicted of the prior felony offense, including testimony from witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record.
The record in this case contains the bill of information from Orleans Parish charging Mr. Coleman charging with distribution of cocaine and the minute entry of trial from August 11,1999, showing that he was convicted of possession of cocaine. It also contains the minute entry from November 15, 2001, which indicates that the defendant and his attorney were present. In the exhibits in the record the appellant’s name, sex, race, and birthday are identical. As the district court noted, the appellant’s social security number is one digit off in the 1997 record.
In Payton the Supreme Court concluded that missing fingerprints were not fatal to a multiple bill. The court stated: “This Court has repeatedly held that [the Habitual Offender Act] does not require the State to use a specific type of evidence to carry its burden at an habitual offender hearing and that prior convictions may be proved by any competent evidence.” State v. Payton, 810 So.2d at 1132, citing State v. Lindsey, 770 So.2d at 344 n. 3.
The case at bar is unusual in that the district court issued reasons for judgment in which it stated that the fingerprint expert testified in court that the fingerprints taken in court and those on the prior conviction record were identical. Furthermore, the exhibits support the identification. The appellant contends that the *1092 transcript is necessary to insure that there was no problem with the adjudication. Given the evidence in the record and the judge’s contemporaneous reasons for judgment, we find that even in the absence of the sentencing transcript 113from the multiple offender hearing, there was sufficient competent evidence to establish the appellant’s second offender status.
For the foregoing reasons, the appellant’s sentences are affirmed.
AFFIRMED.